Felix J. Aulisi, J.
This action is for breach of warranty. Plaintiff Helen M. Zampino, on August 10,1954, accompanied by her husband, coplaintiff, Michael Zampino, entered the defendant’s F. W. Woolworth department store, in the city of Albany and said to a saleslady, “I want to buy a good underarm deodorant; which one would you recommend for me to buy? ” The answer was, “ Veto is the best ”. Mrs. Zampino then looked at the counter which displayed the deodorant in question, picked up a jar of Veto which was still in its original package and handed it to the saleslady. Mrs. Zampino paid for the Veto and then left defendant’s place of business.
That night, after she bathed, she applied the Veto under both arms. She testified that immediately after the application, the area over which she had applied the deodorant started to burn with consequent eruption of small pimples and swelling. Prior to August 10, 1954, she had never used deodorants of any kind on her person.
*688 At the end of the plaintiffs’ proof, the complaint was dismissed as to the defendant, Colgate-Palmolive Co., the manufacturer of said Veto.
The jury returned a verdict of $4,500 for plaintiff, Helen Zampino, for injuries suffered and one of $500 for coplaintiff, Michael Zampino, for loss of services and medical expenses incurred.
Defendant now moves upon the court’s minutes to set aside the verdict and a direction dismissing the complaint or granting a new trial.
Subdivision 1 of section 96 of the Personal Property Law states that “ Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose ”.
As the facts indicate, plaintiff did not state that she wished to have a jar of Veto. She did not make her own choice or exercise her own judgment in the selection of a particular underarm deodorant. There is no merit in defendant’s contention that plaintiff could not have relied on defendant’s skill and judgment because plaintiff herself picked up the jar of Veto from the counter. The weakness in that argument is that the plaintiff picked up that jar only after she was told that “ Veto is the best”. It was not plaintiff’s judgment that compelled her to choose, but reliance on the defendant that made her do so. Nevertheless, any argument to the contrary notwithstanding, the existence or nonexistence of an implied warranty of fitness for a particular purpose depends upon whether the buyer relied, upon his own judgment at the time of the purchase or relied on the skill or judgment of the seller, which is a question of fact to be determined by a jury (Rinaldi v. Mohican Co., 225 N. Y. 70).
Assuming, however, that there was insufficient evidence presented that plaintiff relied on the skill and judgment of the seller, and if plaintiff, as argued by the defendant, used her own judgment in selecting Veto, she may still rely on subdivision 2 of section 96, which says that " Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality ”. Prior to the sales act, the seller was not liable for food sold in sealed cans or its original package when it was known to the buyer that the seller had not prepared it, had not *689 inspected it, and was ignorant of the contents of the article. The buyer’s remedy was against the manufacturer and not the seller. However, this is no longer the law of this State. The sales act expressly refuses to distinguish between manufacturers, growers and dealers and it is clearly the law today that the dealer as well as the manufacturer or grower warrants anything he sells, if purchased by description, that it is of merchantable quality. The burden may be heavy, but it is one of the hazards of the business (Ryan v. Progressive Grocery Stores, 255 N. Y. 388; Kelvinator Sales Corp. v. Quabbin Imp. Co., 234 App. Div. 96; Rinaldi v. Mohican, supra).
Defendant’s argument that “ the fact that Veto cream deodorant did not prove ' fit ’ for application to Mrs. Zampino’s skin, does not prove that the Veto was not of merchantable quality ”, is without merit. It is my opinion that that is the very reason why it is unmerchantable. Defendant’s argument along this vein may have had some force if the plaintiff, Mrs. Zampino, was suing in negligence, and, if there was a showing that she was suffering from an allergy or some unusual susceptibility which could have been attributed to the ingredient, aluminum sulf amate, which went into the making of Veto, and, that the cause of the injury was the allergy and not the product (Willson v. Faxon, Williams & Faxon, 138 App. Div. 359; Cleary v. Maris Co., 173 Misc. 954; Singer v. Oken, 193 Misc. 1058).
Assuming further that Veto cream deoderant was sold under a trade name, subdivision 4 of section 96 does not necessarily exclude from application the remaining subdivisions of section 96 and goods sold under a trade name must be at least as merchantable as the general run of such goods (Foley v. Liggett & Meyers Tobacco Co., 136 Misc. 468, affd. 233 App. Div. 691). I conclude that although the Veto cream in question was put up and offered for sale under a trade name, this is not a case of a purchase by a trade name, since the plaintiff requested of the saleslady at the defendant’s cosmetic counter a good underarm deoderant and the saleslady recommended Veto.
Lastly, it is maintained by the defendant that since the jury must have assumed that the ingredient aluminum sulf amate was the irritant which injured the plaintiff, and, since the words “contains aluminum sulf amate ” were plainly printed on the package box and cream jar cap, that plaintiff was on notice and cursory examination would have revealed that fact and therefore, plaintiff is without a remedy under subdivision 3 of section 96. However, I am convinced that in a case of this nature, the law does not compel a person to inspect and chemically analyze the ingredients to insure that no harm will come to her. Nor *690 can it' be assumed, without proof, that a lay person would or should realize the possible harmful effects of aluminum sulfa-mate when applied to her person from a mere reading of the words. The defect was latent and inspection impossible. In such circumstances, the law casts the burden on the seller, who may vouch in the manufacturer, if the latter was to blame (Ryan v. Progressive Grocery Stores, supra).
The question next arises as to whether the coplaintiff husband, Michael Zampino, may maintain an action for breach of implied warranty to recover for the damage sustained by him for loss of his wife’s services and for medical expenses incurred. The only proof bearing on this point is the testimony that the husband accompanied and was present when the plaintiff wife purchased the cream in question. Is this a sufficient showing that the wife acted as agent for her husband in making the purchase? I have come to the conclusion that it is not.
There is no proof that the wife was acting both as principal for herself and as agent for her husband. It cannot be assumed from the facts in this case that the warranties ran to both husband and wife as the purchase was made solely by the wife and the husband played no part therein except that he was present when the purchase was made. A cause of action for breach of warranty rests on contractual relations and hence there is no warranty except to the person to whom the sale is made (Gimenez v. Great Atlantic & Pacific Tea Co., 264 N. Y. 390; Frier v. Laube’s Old Spain, 265 App. Div. 402).
I, therefore, hold and decide that the defendant’s, F. W. Woolworth Co., motion to set aside the verdict of the jury and for direction that the complaint be dismissed is granted as to the plaintiff Michael Zampino and denied as to the plaintiff Helen M. Zampino.
An order may be submitted accordingly.